```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CRC Inc.                                    :
                                            :
        Petitioner,                         :
                                            :          10 CV 4981 (HB)
          - against -                       :
                                            :          OPINION &
Computer Sciences Corporation,              :          ORDER
                                            :
                                            :
        Respondent.                         :
------------------------------------------------------------x
```

**Hon. Harold Baer, Jr., District Judge:**

      Petitioner CRC, Inc. ("Petitioner" or "CRC") seeks vacatur of a partial arbitration award and disqualification of the American Arbitration Association ("AAA") panel that issued it. The core claim in this petition is that the chairman of the arbitration panel is partial to Respondent Computer Sciences Corporation ("Respondent" or "Computer Sciences") because of certain professional connections between the chairman's law firm and the law firm representing Computer Sciences. For the reasons that follow, I find that at least for now the petition warrants neither vacatur nor disqualification.

**FACTUAL BACKGROUND**

      Respondent was hired by JP Morgan to perform certain services, and as part of its contract was required to utilize CRC as its sub-contractor for internet technology consulting services. CRC and Computer Sciences entered into an agreement that defined the business relationship between these two entities ("Agreement"). The Agreement included a dispute resolution procedure, which was triggered when CRC commenced this arbitration on July 30, 2004. The Agreement mandated the the services of three "disinterested" arbitrators. CRC appointed Francis Conrad without objection; Computer Sciences appointed John Lovi, initially with no objection, and Lovi and Conrad together selected Richard Silberberg to chair the panel. Silberberg's disclosure statement mentioned a single, past instance of joint work between his law firm (Dorsey & Whitney LLP) and the law firm representing Computer Sciences (McDermott, Will & Emery LLP).

1

CRC subsequently objected to a late disclosure by Lovi, based on the fact that Lovi had worked on cases with Respondent's counsel Mr. Calandra of McDermott, Will & Emery, had receieved money from Respondent's counsel through 2005, and had received fees from Respondent.  Lovi stepped down, and Respondent selected Richard Farren to replace him.  Farren was confirmed by the AAA over CRC's objection based on apparent partiality.

Arbitration proceeded, albeit at a snail's pace.  A partial award, dated April 1, 2010, dismissed CRC's breach of contract claim but left other claims unresolved.

CRC commenced the present action on June 28, 2010, in New York state court.  Following commencement, Silberberg filed a Supplemental Disclosure Statement, explaining that his previous failure to disclose his firm's relationships with McDermott, Will & Emery was due to the way his firm's conflict-database was set up: it simply did not identify those kinds of relationships, and presumably they did not otherwise come to his attention.  These actions made all three arbitrators aware of the current petition, but the arbitrators rejected CRC's request for a stay.  Respondent removed the action to this Court, and CRC moved for remand back to state court.  In an Order dated August 23, 2010, I denied that motion and stayed the arbitration pending resolution of this petition.

## DISCUSSION

### I. The FAA governs this petition for vacatur

As a threshold matter, the parties dispute which standard Petitioner must meet in order to merit vacatur and disqualification.  CRC argues that New York CPLR 7511(b) governs their petition.  Computer Sciences argues that the more deferential Federal Arbitration Act ("FAA") standard governs.

The FAA applies to diversity cases in which the underlying contract "evidenc[es] a transaction involving interstate commerce."  *Barbier v. Sharson Lehman Hutton, Inc.*, 948 F.2d 117, 120 (2d Cir. 1991); *Pernod Mgmt. Group v. Stewart's Mobile Concepts, Ltd.*, No. 07 cv 10649, 2008 WL 463720, *2 (S.D.N.Y. Feb. 19, 2008).   "[W]here the choice of law provision states that New York law shall govern both the agreement and its enforcement", New York law applies.  *Pernod Mgmt. Group*, 2008 WL at *2 (*quoting Diamond Waterproofing Sys., Inc. v. 55 Liberty Owners Corp.*, 826 N.E.2d 802, 806 (NY 2005).  In the absence of "critical language concerning enforcement",

however, the FAA's vacatur rules apply.  *Id.*  This Court has applied the FAA's vacatur standard in a diversity case even where the arbitration agreement provided for a state law standard of review for vacatur, because the Supreme Court's decision in *Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576 (2008), prohibits parties from agreeing by contract to a different standard for vacatur than that set forth in the FAA.  *See McQueen-Starling v. UnitedHealth Group, Inc.*, 654 F.Supp.2d 154, 163 (S.D.N.Y. 2009).

In this case, the Agreement's choice-of-law clause merely states that

> This agreement and performance under it shall be governed by and construed in accordance with the laws of the state of New York, without regard to its choice of law principles.

Decl. of Roy A. Klein in Supp. of CRC's Pet. for Vacatur and Disqualification, Ex. 1 ("Petition"), Ex. A at Schedule A-7, Section 4.

This Court has held that similar clauses did not show an intent to modify the FAA rules governing waiver.  *See Pernod Mgmt. Group*, 2008 WL at *2 ("In this case, the choice of law provision states only that the Agreement 'shall be construed in accordance with New York law.'").  Indeed, where as here the FAA applies, section 10 provides the "exclusive grounds" for vacatur.  *Hall Street Assocs.*, 552 U.S. at 584.  Contractually expanding the grounds for vacatur is precisely what the Supreme Court found inconsistent with the FAA.  *See id.*  While *Hall Street* addressed an arbitration agreement containing its own grounds for vacatur, the general rule applies as well here, where the Agreement purports to incorporate state law grounds for vacatur.

This is true notwithstanding the fact that the petitioner originally brought its petition to vacate in state court.  That fact does nothing to warrant the application of a state standard of review.  There is in fact "persuasive authority in this Circuit that the FAA standard of review applies to a motion to vacate an arbitration award that was originally brought in state court but has been removed to federal court."  *McQueen-Starling v. UnitedHealth Group, Inc.*, 654 F.Supp.2d 154, 163 (S.D.N.Y. 2009) (*citing Vail-Ballou Press, Inc. v. Graphic Commc'ns Int'l Union, Int'l Bhd. Of Teamsters, Local 898-M*, 480 F.Supp.2d 568, 51 (N.D.N.Y. 2007); *Dunhill Franchisees Trust v. Dunhill Staffing Sys.*, 513 F.Supp.2d 23, 26 (S.D.N.Y. 2007).

**II.  Vacatur is not warranted under the FAA.**

Under the FAA, a district court may vacate an arbitration award only under the limited circumstances set forth in section 10(a). *Hall Street Assocs., LLC.*, 552 U.S. at 584.[1] That section provides for vacatur "where there was evident partiality" on the part of an arbitrator. 9 U.S.C. § 10(a)(2). Consistent with federal policy favoring arbitration, the FAA's vacatur provisions are "to be accorded the narrowest of readings." *Employers' Surplus Lines Ins. Co. v. Global Reinsurance Corp.-U.S. Branch*, 2008 WL 337317, *3 (S.D.N.Y 2008) (*quoting Blue Tee Corp. v. Koehring Co.,* 999 F.2d 633, 636 (2d Cir.1993) (internal quotation marks omitted).

"A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." *Ecoline, Inc. v. Local Union No. 12 of Intern. Ass'n of Heat and Frost Insulators and Asbestos Workers, AFL-CIO*, 271 Fed.Appx. 70, 72, 2008 WL 833505, *2 (2d Cir. 2008) (*citing D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir.2006)). Sufficient facts must be proved so that "a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Lucent Technologies Inc. v. Tatung Co.*, 379 F.3d 24, 31 (2d Cir. 2004).

While the "Supreme Court has held that an arbitrator's failure to disclose a material relationship with one of the parties can constitute 'evident partiality' requiring vacatur", *Lucent Technologies Inc. v. Tatung Co.*, 379 F.3d 24, 28 (2d Cir. 2004) (*citing Commonwealth Coatings Corp. v. Continental Cas. Co.*, 393 U.S. 145, 147-48 (1968)), *Commonwealth Coatings* "does not establish a *per se* rule requiring vacatur of an award whenever an undisclosed relationship is discovered." *Id.* at 30. Indeed, "some 'undisclosed relationships . . . are too insubstantial to warrant vacating the award.'" *Lucent Technologies Inc.*, 379 F.3d at 30 *quoting Commonwealth Coatings Corp.*, 393 U.S. at 152 (White, J., concurring). For example, "an arbitrator's business relationships may be diverse indeed, involving more or less remote commercial connections with great numbers of people. He cannot be expected to provide the parties with his complete and unexpurgated business biography." *Id.*

---

[1] The FAA "only permits a federal court to confirm or vacate an arbitration award that is final." *Employers' Surplus Lines Ins. Co. v. Global Reinsurance Corp.-U.S. Branch*, No. 97 cv 2521, 2008 WL 337317, *3 (S.D.N.Y. Feb. 6, 2008) (*citing Banco De Seguros Del Estado v. Mut. Marine Office, Inc.,* 230 F.Supp.2d 362, 368 (S.D.N.Y.2002)). However, the parties have not addressed whether the "partial award" at issue here was final for purposes of challenge, so I address the issue of vacatur on its merits.

In the context of confirmation proceedings following an arbitration, the Second Circuit has "not been quick" to vacate an arbitration award based on an "arbitrator's alleged failure to disclose information." *Id.* at 28. Such a measure is unwarranted "where the complaining party should have known of the relationship . . . or could have learned of the relationship just as easily before or during the arbitration rather than after it lost its case." *Id.* (internal citations omitted).

Here Petitioner claims the arbitrators were biased on the basis of conduct which, while hardly commendable, does not appear to me to constitute "evident partiality" under section 10(a). CRC claims the selection of Richard Silberberg as chairman of the panel was tainted from the beginning in so far as it was made, in part, by John Lovi. Lovi was initially selected by Respondent and later resigned based on CRC's objections that he was not impartial since he had previously received fees from Respondent and its counsel. Petition ¶ 14-16. CRC also objected to Lovi's replacement, Richard Farren, on the grounds of apparent partiality, but the AAA denied CRC's request for disqualification. *Id.* ¶ 15. This objection was based on the fact that Farren had attended a political fundraiser for Respondent's counsel John Calandra of McDermott when Calandra previously ran for office; moreover, Farren had presided over a previous mediation in which Calandra was counsel. *Id.* Unsatisfied with the AAA's ruling, CRC asserts these facts here as further evidence of bias in the panel.

The core of the allegations, however, derive from Silberberg's relationship with the law firm McDermott, Will & Emery, Respondent's counsel in the arbitration at issue here and in this proceeding. CRC points out that Dorsey, where Silberberg is in charge of litigation, worked with McDermott on at least five federal cases pending before and/or during Silberberg's tenure as chairman, and in four of those cases the two firms served as co-counsel. *Id.* ¶ 31. As an equity partner, CRC asserts, Silberberg presumably earned substantial fees as a result of this relationship. *Id.* ¶ 32. Dorsey attorneys have sponsored *pro hac* admissions of McDermott lawyers, the two firms have been listed together on the same signature pages of court documents, and Silberberg had direct authority over 9 attorneys working as co-counsel with McDermott lawyers during Silberberg's tenure as chairman. *Id.* ¶¶ 33(c)-35. Petitioner alleges that the significance of these relationships is enhanced by the fact that the litigations were large in scale and some involved a client who has a long-term relationship with Respondent involving billions of dollars in investments and revenue. *Id.* ¶ 33(b).

In light of these disclosures, Silberberg's position that no current or recent relationship existed between Dorsey and any of the parties or their counsel was, as CRC suggests, both deficient and misleading. Silberberg asserted in the statement that:

> I do not have any existing or past financial, business, professional, family or social relationships with either of the parties to the [arbitration at issue, or] with either of their attorneys.

Petition, Ex. D. He did allow that in the past, his firm had previously represented Computer Sciences, and that Computer Sciences was listed as having interests adverse to the interests of other firm clients. *Id.* He also noted that an "attorney in my firm's London England office was retained by McDermott Will & Emery LLP to provide real estate law assistance in connection with a transactional matter involving a client of that firm." *Id.*

After learning of these relationships, apparently by way of papers filed in this action, Silberberg submitted a Supplemental Disclosure Statement, wherein he acknowledged the existence of the relationships, and explained that he had not learned of them initially because his firm's conflict-check database was not set up to identify co-counsel relationships. *See* Decl. of John J. Calandra in Supp. of Resp. Computer Sciences Corporation's Second Memo. Of Law in Opp. to Petitioner's Pet. for Vacatur, Ex. R at 2. It is troubling that Silberberg did not disclose this information earlier, particularly in light of the "Arbitrator's Oath" wherein he he attested to the fact that he had "diligently conducted a conflicts check, including a thorough review of the information provided to me about this case to date." Petition, Ex. D.

Nonetheless, these facts, while unfortunate, do not permit a finding that "a reasonable person would *have to conclude*" that the arbitrator was partial to Respondent. *See Lucent Technologies Inc.*, 379 F.3d at 31 (emphasis added). Indeed, they appear to evidence the sort of undisclosed relationships that, while disclosure would have been proper, the Second Circuit would find they were "too insubstantial to warrant vacating the award." *Lucent Technologies Inc.*, 379 F.3d at 30. In contrast, an undisclosed father-son relationship between an arbitrator and an officer of one of the unions in an arbitration did satisfy the "evident partiality" standard. *Morelite Constr. Corp. (Div. of Morelite Elec. Serv., Inc. v. N.Y. City Dist. Council Carpenters Ben. Funds*, 748 F.2d 79, 85 (2d Cir. 1984). But in another case where the arbitrators were also Trustees of the benefit fund of a union which was a party to the arbitration, the Second Circuit found that "the mere

appearance of bias due to an alleged conflict of interest" was not enough and that to vacate "would seriously disrupt the salutary process of settling [] disputes through arbitration. *Ecoline, Inc. v. Local Union No. 12 of Intern. Ass'n of Heat and Frost Insulators and Asbestos Workers, AFL-CIO*, 271 Fed.Appx. 70, 72, 2008 WL 833505, *2 (2d Cir. 2008). Nor was a district court found to be "clearly erroneous" in declining to find "evident partiality" where an arbitrator had previously received fees as an expert witness for one of the parties to the arbitration. *Lucent Technologies Inc. v. Tatung Co.*, 379 F.3d 24, 31 (2d Cir. 2004). The "high" bar of section 10(a) may be fractured but is not brokenwhere the relationship was a secondary commercial one, and involved two large law firms with many attorneys working on many matters all over the country if not all over the world. Moreover, accepting as true Respondent's claims that Silberberg was unaware of the relationships, Silberberg could not have been partial to Respondent on the basis of relationships he did not know existed. But even without this, the relationships here are simply too attenuated to constitute more than "mere speculation of bias," *Ecoline, Inc.*, 271 Fed.Appx. at 72, rather than "evident partiality."

Petitioner relies principally on *Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.*, where the Second Circuit held that "[a]n arbitrator who knows of a material relationship with a party and fails to disclose it meets *Morelite*'s "evident partiality" standard: A reasonable person would have to conclude that an arbitrator who failed to disclose under such circumstances was partial to one side." 492 F.3d 132, 137 (2d Cir. 2007). However, the court also stressed that "we are *not* creating a free-standing duty to investigate." *Id.* at 138 (emphasis in original). Only when an arbitrator knows of a potential conflict does "a failure to either investigate or disclose an intention not to investigate [indicate] evident partiality." *Id.* Failure to investigate following revelation of the London, England relationship is not persuasive here because the matter had been closed, and thus appeared not to compromise Silberberg's impartiality. *See Lucent Technologies Inc.*, 379 F.3d at 31 (finding no clear error where district court declined to vacate where the working relationship between arbitrator and party to arbitration had "materially ended" before the arbitrator was appointed). By the same token, the initial disclosure of the London, England relationship put Petitioner on notice, and it "could have learned of the relationship just as easily before or during the arbitration" rather than having waited until after an adverse ruling. *See id.* at 28.

Where as here the evident partiality standard is not met, the award will not be vacated.

7

### III. Disqualification is premature and unwarranted.

In the Second Circuit "it is well established that a district court cannot entertain an attack upon the qualifications or partiality of arbitrators until after the conclusion of the arbitration and the rendition of an award." *In re Petition of Insurance Co. of North America v. Public Service Mut. Ins. Co.*, 2009 WL 2381854, *6 (S.D.N.Y. 2009) (*citing Aviall, Inc. v. Ryder Sys., Inc.*, 110 F.3d 892, 895 (2d Cir.1997) (Although the FAA provides for vacatur where there was "'evident partiality or corruption in the arbitrators,' it does not provide for pre-award removal of an arbitrator.")); *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 n.4 (2d Cir. 1980). Petitioner's request for disqualification is premature.

### IV. The contractual obligation to share the costs of arbitration

Finally, CRC seeks to be relieved of its obligation to contribute towards arbitration costs going forward. It cites a recent NY Court of Appeals decision providing for such a remedy where an agreement to arbitrate contains "terms that could preclude a litigant from vindicating" its claims in an arbitration forum. *Brady v. Williams capital Group, L.P.*, 14 N.Y.3d 459, 467 (2010). CRC does not support its position or its applicability to the case at bar; it merely claims such relief is appropriate "[i]n light of the substantial arbitration costs that CRC has incurred to date." Mem. In Supp. of CRC's Pet. for Vacatur and Disqualification, 25.

### CONCLUSION

I conclude that vacatur and disqualification are unwarranted on the current record. Despite the various improprieties that appear to have plagued this arbitration, CRC has not met the "evident partiality" standard required by the FAA. Nor has CRC shown an entitlement to be relieved of its contractual obligation to share arbitration costs. The petition is accordingly DENIED.

SO ORDERED
October 14, 2010
New York, New York

Hon. Harold Baer, Jr.
U.S.D.J.

8